UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER YOUMANS,<br>    Plaintiff,<br><br>v.<br><br>HIGHMARK LIFE INSURANCE COMPANY,<br>    Defendant. | :<br>:<br>:<br>:  CIVIL ACTION NO.<br>:  3:02 CV 6 (SRU)<br>:<br>:<br>:<br>: |

## RULING ON MOTION TO SET ASIDE JUDGMENT

Plaintiff Peter Youmans moves pursuant to Fed. R. Civ. P. 60(b) to set aside the judgment entered following the parties' execution of a settlement agreement. Youmans brought the underlying action on November 26, 2001, claiming that Highmark Life Insurance Company ("Highmark") had "failed, neglected and refused to pay all of the benefits rightfully due and owing to the plaintiff herein" and had breached its contractual obligations to him. (Youmans' Complaint at 1.) Highmark removed the case to federal court on grounds that Youmans' case presented a federal question. (Notice of Removal at 2-3.) This court endorsed a stipulation of dismissal on April 30, 2002, after the parties reported the case settled. Youmans now alleges that Highmark's calculations used to effectuate settlement included a "ten (10) month gap in payments, which were allegedly offset by compensation and earnings which are not supported by documentation." (Youmans Motion to Set Aside Judgment of Dismissal at 1.)

Youmans stresses that the only issue addressed during settlement discussions was whether or not he was actually disabled, not how the language of the policy would impact relevant benefits. Highmark Life Insurance Company ("Highmark") responds that the calculations of Youmans' settlement were a part of the settlement, part of the initial complaint

and represented a reduction in Youmans' benefits pursuant to a provision in his long term disability contract. Highmark argues that Youmans had every opportunity to review and critique the calculation, but failed to do so before entering into settlement. Highmark contends that Youmans' failure to reform the settlement terms does not authorize Youmans to reopen his case. Based upon the parties' briefs and the record developed at the November 13, 2003 hearing on Youmans' motion, I agree with Highmark and hereby deny Youmans' motion to set aside the judgment.

**Discussion**

Rule 60(b) authorizes a district court to "relieve a party or a party's legal representative from a final judgment, order, or proceeding" under five specific circumstances or "for any other reason justifying relief from the operation of judgment." Fed. R. Civ. P. 60(b)(6). This dispute began with a November 6, 2001 demand letter for the reinstatement of Youmans' disability benefits sent to Sandra Stalworth, a Highmark Disability Claims Administrator, from Youmans' then attorney, Richard Weinstein. (Plaintiff's Exhibit 1.) Highmark contacted Youmans' employer, Connecticut Spring and Stamping ("CSS"), to gather information to reevaluate Youmans' disability claim. Stalworth received a letter dated March 4, 2002, from CSS's Human Resources Director, Kathleen Bellemare informing her of Youmans' work history. (Defendant's Exhibit B.) Bellemare indicated that CSS did not keep attendance records for company officers such as Youmans, but that to the best of her recollection, Youmans was completely disabled from January 29, 1998 until April 10, 1998; working part-time from April 13, 1998 until April 4, 2000 (with the exception of the month of January 1999 at which point he was completely disabled);

completely disabled from April 4, 2000 until July 5, 2000; working part-time from July 5, 2000 until June 29, 2001; and completely disabled from June 29, 2001 until March 4, 2002. Testimony from a Highmark Senior Business Analyst, Laurie Roth, revealed that she relied on this letter, in addition to Youmans' pay stubs, when calculating Youmans' benefits.

The parties agree that two provisions of Youmans' benefits plan are relevant to the calculation of his disability benefits. The first uses income from employment to reduce a beneficiary's long term disability ("LTD") benefits by half of the income earned after twelve months of work while receiving such benefits. Youmans does not dispute that this "50% Return to Work Benefit" applies to him. Language in both the CSS Long Term Disability Insurance Policy and a letter explaining Youmans' benfits forwarded to Youmans' attorney on October 3, 2002, reflects that this provision applies to Youmans disability benefits. The "50% Return to Work Benefit" provision allows that:

> After the first 12 months of LTD Benefit payments while you are working, the Income From Other Sources used to reduce the amount of your LTD Benefit will include one-half the amount of your earnings from work you perform while you are Disabled, but only if your work earnings exceed 20% of your indexed Predisability Earnings.

(Plaintiff's Exhibit 5, CSS Long Term Disability Insurance Policy at 12, Return to Work Provision; Plaintiff's Exhibit 3, Letter from Janet Helmke to Richard Weinstein, attachment at 2.) The parties agree that Youmans' work earnings exceeded 20% of the indexed Predisability Earnings. If after those earnings are taken into consideration, the applicant's earnings exceed the policy's maximum benefit, the applicant is eligible only for the policy's minimum benefit. The

3

contract further provides:

> The MINIMUM LTD BENEFIT is $100 or 10% of your Maximum LTD Benefits, whichever is greater.

(Plaintiff's Exhibit 5 at 5.)  In Youmans' case, his maximum benefit was $7,500, 10% of which is $750.

Before the advent of this litigation, Highmark had approved Youmans' benefit coverage from May 12, 1999 until September 30, 1999.  (Plaintiff's Exhibit 4 at 3.)  The breakdown of benefits sent to Youmans and his attorney on April 2, 2002 revealed that Youmans' benefits would be reinstated from September 30, 1999 forward until April 1, 2002.  The chart reflecting the breakdown of the benefits showed that Youmans would receive full benefits from October 1, 1999 until September 1, 2000.  The chart designated September 2000 as the thirteenth month, the month at which point the benefits change subject to the LTD Benefits contract.  As explained at the bottom of the chart, because Youmans had been receiving benefits for four months prior to the start date on the chart (although Youmans had also been compensated for half of a fifth month in May), October 1999 would be counted as the fifth month.  The chart also exempted April 2000 through June 2000 from the twelve months of part-time work because of Youmans' complete disability during that time.  The part-time work penalty ended in July 2001, when Youmans was again completely disabled.  In sum, the assessment of benefits due to Youmans is entirely consistent with the terms of benefits contract and the information provided to Highmark by CSS.

The Settlement Agreement entered into by Youmans and Highmark specified that "[i]n

consideration of Youman's [sic] execution of this Agreement and General Release . . . Highmark agrees to pay . . . the total sum of $159,040.70." (Plaintiff's Exhibit 6 at 1.) No formula for the determination of the settlement sum was stated, nor was any explanation of the calculation of this total was set forth. Both parties acknowledged "that they have had the benefit of having this Agreement reviewed by their own independent counsel prior to its execution." (Plaintiff's Exhibit 6 at 4.)

     Youmans makes his motion broadly under Rule 60(b). The motion could only reasonably be construed as one made under Rule 60(b)(1) for, "mistake, inadvertence, surprise, or excusable neglect," or under Rule 60(b)(6) for, "any other reason justifying relief from the operation of the judgment." Although Youmans has provided some indication at oral argument that the numbers represented to Highmark may not be reflective of Youmans' actual part-time work, this mistake or oversight cannot rightfully be attributed to Highmark because it is uncontensted that Highmark relied on information provided by Youmans' employer, provided this information to Youmans and his counsel and requested that either Youmans or his attorney contact it with any concerns. It is the obligation of Youmans and his legal representative to review the terms of settlement, confirm the accuracy of the accounting and to settle only when satisfied. Furthermore, it is often the case that the final settlement calculation lies somewhere between the plaintiff's and the defendant's estimate of damages. It is the number at which both parties are slightly displeased, but reluctantly willing to resolve their dispute; settlement is compromise.

     Highmark's understanding of Youmans' work history was clearly outlined in documents Youmans and his attorney acknowledge having received prior to settlement. There may be an indication that Youmans and his attorney neglected to scrutinize Highmark's estimation of

5

Youmans' benefits, but there is no indication that such neglect was excusable. The Supreme Court has found that carelessness or oversight may amount to excusable neglect in some cases, finding that the concept is "not limited strictly to omissions caused by circumstances beyond the control of the movant." Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 387-96 (1993). Nevertheless, generally "sheer oversight is not excusable neglect." Hartford Steam Boiler Inspection & Ins. Co. v. Southeastern Refractories, 212 F.R.D. 62, 66 (D. Conn. 2003) (motion under Rule 60(b)(1) was denied when turnaround in the law offices of plaintiff's counsel led to a failure to respond to a motion to dismiss); but see Yanusis v. Landry's Seafood, Inc., 2001 WL 1094979 (D. Conn. Sept. 7, 2001) (Rule 60(b)(1) motion was granted after plaintiff's counsel did not oppose a motion to dismiss, believing the court would first decide the outstanding motion for reconsideration). Any additional mistake may be reasonably attributable to CSS, rather than to Highmark.

It has long been established in the Second Circuit that the district court maintains discretion over whether or not to grant relief under Rule 60(b). Securities and Exchange Commission v. McNulty, 137 F.3d 732, 738 (2d Cir.), cert. denied, 525 U.S. 931 (1998); see also National Petrochemical Co. v. M/T Stolt Sheaf, 930 F.2d 240, 244 (2d Cir. 1991); Weissmann v. Freeman, 868 F.2d 1313, 1326 (2d Cir.), cert. denied, 493 U.S. 883 (1989); International Controls Corp. v. Vesco, 556 F.2d 665, 670-71 (2d Cir. 1977), cert. denied, 434 U.S. 1014 (1978); Altman v. Connally, 456 F.2d 1114, 1116 (2d Cir. 1972) (per curiam). Finding no reason to grant such relief, Youmans' motion is denied.

**Conclusion**

For all the reasons stated above, Youmans' motion for Rule 60(b) relief (**doc. # 12**) is DENIED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 13th day of July 2004.

       /s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge